United States District Court
Southern District of Texas
**ENTERED**
October 08, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NDIAGA NGUIRANE, | § | |
| | § | |
| Petitioner | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:26-CV-552 |
| | § | |
| MARKWAYNE MULLIN, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## ORDER

Petitioner Ndiaga Nguirane is a native of Senegal who entered the United States unlawfully. In 2025, an immigration judge issued a final order of removal as to Petitioner, but granted withholding of removal as to Senegal under 8 U.S.C. § 1231(b)(3). Petitioner was released into the United States under an Order of Supervision, but then re-detained in May 2026. He filed this lawsuit seeking his immediate release, but days later, was removed to Sierra Leone. Some evidence suggests that the country of Sierra Leone then removed him to Senegal.

Respondents seek dismissal of Petitioner's habeas action on the grounds that his removal renders his claims moot. (Mot. to Dismiss, Doc. 8) Petitioner contends that the Court can order Respondents to facilitate his return to the United States. After conducting a hearing on the matter, and based on the record and the applicable law, the Court concludes that Petitioner's removal defeats his cause of action in habeas corpus and renders his remaining claims moot. But the Court also concludes that Petitioner should be afforded the opportunity to amend his pleading to assert causes of action that he believes he may possess based on his removal to Sierra Leone.[1]

### I.

Petitioner entered the United States unlawfully in 2023.

[1] At present, the Court takes no position on the legality of Petitioner's removal to Sierra Leone and any subsequent removal to Senegal.

In 2025, an immigration judge denied Petitioner's request for asylum and ordered him removed, but granted withholding of removal as to Senegal. (IJ Order, Doc. 1–2, 15 (relying on 8 U.S.C. § 1231(b)(3)) In making this determination, the immigration judge found that Petitioner's "life or freedom would be threatened in [Senegal]" based upon a protected characteristic. (*Id.* at 10) Neither Petitioner nor the United States appears to have appealed these decisions, and Petitioner was released into the United States under an Order of Supervision.

On May 1, 2026, the Department of Homeland Security revoked Petitioner's Order of Supervision.[2] Three days later, Respondents detained Petitioner in Baltimore when he appeared for a check-in with Immigration and Customs Enforcement. The same day, the Department of Homeland Security served Petitioner with the Notice of Revocation of Release (Doc. 12–1). Petitioner was then transferred to the Port Isabel Service Processing Center in Cameron County, Texas.

On May 17, Petitioner filed this action under 28 U.S.C. § 2241, seeking his immediate release. He alleged various causes of action asserting violations of his statutory and constitutional rights, and relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001). In support of these claims, he alleged that Respondents could not remove him to Senegal, and that "removal to any third country is, at best, speculative and unsupported by any evidence of realistic prospects[.]" (Pet., Doc. 1, ¶ 38)

Two days later, Respondents removed Petitioner to Sierra Leone. Respondents provided Petitioner with only minimal, if any, notice of his removal to that country. And Respondents do not appear to have afforded Petitioner any form of screening as to any fears he may have concerning his removal to Sierra Leone.

Instead, Respondents relied on a dispatch by the Sierra Leone Ministry of Foreign Affairs, through which the country "assure[d] the Government of the United States of America that it

---

[2] Petitioner contests the validity of this revocation. (*See* Resp., Doc. 13)

intends to treat any ECOWAS [individuals who are nationals of some West African countries] citizens transferred from the United States to Sierra Leone in a manner that is consistent" with international law. (Dipl. Assur. Memo, Doc. 11–1) The Ministry of Foreign Affairs also represented that individuals that the United States removed to Sierra Leone "would not be subjected to persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or torture in Sierra Leone or in any country to which the Government of Sierra Leone may further transfer them." (*Id.*) In relying on these reassurances by Sierra Leone, Respondents invoked the provision of the March 2025 Guidance by the then-Secretary of Homeland Security that, in specified circumstances, the United States could remove individuals who are subject to a final order of removal to any country that has provided credible diplomatic assurances that such individuals will not be persecuted or tortured in the designated country, without affording that alien meaningful notice of the removal or any screening for fear of being removed to the particular third country.

On May 19, two days after being removed to Sierra Leone, Petitioner moved for a temporary restraining order prohibiting Respondents "and all those acting in concert with [Respondents] from transferring, removing or causing the removal of Petitioner from Sierra Leone to any other country, including Senegal" and directing Respondents to "facilitate Petitioner's prompt return to the United States[.]" (Mot. for TRO, Doc. 5, ¶ 20)

On May 27, the country of Sierra Leone appears to have removed Petitioner to Senegal. (*See* Notice, Doc. 10)

For their part, Respondents move to dismiss Petitioner's action, arguing that his removal renders his claims moot. (Mot. to Dismiss, Doc. 8)

On June 16, the Court held hearing on the issues that the Petitioner and the Motion to Dismiss present.

**II.**

The Petition for Writ of Habeas Corpus (Doc. 1) remains the operative pleading in this matter. In that pleading, Petitioner challenges his ongoing detention, basing his causes of action on *Zadvydas v. Davis*, 533 U.S. 678 (2001). Specifically, he alleges that an immigration judge granted him protection from removal to Senegal, and that no prospect exists of his removal to any other country. As a result, he alleges that "no significant likelihood of removal in the reasonably foreseeable future" exists. (Pet., Doc. 1, ¶ 53)

Petitioner's allegations regarding the possibility of his removal to a country other than Senegal has proven wrong. The pending issue is whether and to what extent Petitioner's removal to Sierra Leone affects his causes of actions and this lawsuit. Respondents ask the Court to dismiss the habeas action because "Petitioner's removal renders moot any controversy that may have previously existed with respect to Petitioner's detention status." (Mot., Doc. 8, 3) Petitioner filed no response to the Motion, but his counsel presented argument on the matter at the June 16 hearing.

"It is clear from the common-law history of the writ [of habeas corpus] that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (cleaned up) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). The "core remedy" of habeas is an individual's release from detention, and claims "so far outside the core of habeas may not be pursued through habeas." *Thuraissigiam*, 591 U.S. at 117 (citing *Skinner v. Switzer*, 562 U.S. 521, 535, n. 13 (2011)).

In the immigration context, the deportation of an individual who has filed a habeas action does not automatically render the case moot. Rather, "for a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition *and* that his subsequent release has not rendered the petition moot,

i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) (emphasis in original). A "cognizable collateral consequence" that stems from an individual's wrongful removal "represents a live case or controversy and [the habeas petition] is not moot." *Id.* at 298. In *Zalawadia*, the parties agreed that the deported-petitioner's removal barred "him from seeking reentry into the United States for a period of five years." *Id.* This "penalty constitute[d] a cognizable collateral consequence" that presented a live case or controversy, even after his removal. *Id.*

In the present case, no party disputes that Petitioner was within Respondents' custody at the time he filed his Petition. And in his pleading, he contends that his detention is "no longer authorized" under any provision of law. (Pet., Doc. 1, ¶ 55) This claim falls squarely within the heartland of a habeas action—i.e., seeking relief from allegedly-unlawful detention. As courts determine jurisdiction at the time of the lawsuit's filing, this Court possessed subject matter jurisdiction under Section 2241 over Petitioner's request for release.

But Petitioner's removal to Sierra Leon rendered his current allegations moot. He requested release from custody, and Respondents no longer detain him.

At the same time, his removal did not automatically defeat all possible claims by Petitioner. As in *Zalawadia*, Petitioner's removal to Sierra Leone potentially triggers the bar that Section 1182(a)(9)(A)(i) imposes–i.e., he may be automatically deemed inadmissible for five years from the date of his removal. This impact could represent a "cognizable collateral consequence" that preserves a live case or controversy in habeas. And in differing contexts, courts have granted relief, or at least recognized a cause of action as viable, when immigration authorities allegedly proceeded with the removal of an alien in an unlawful manner. *See, e.g.*, *Zapata v. Mullin*, No. CV 26-1560 (RJL), 2026 WL 1352420 (D.D.C. May 13, 2026) (requiring defendants to "take all steps to facilitate return of plaintiff"); *Martinez-Andino, v. U.S. Department of Homeland Security, et al.*, No. CV 26-1208 (BAH), 2026 WL 1801137 (D.D.C. June 23, 2026) (granting writ

of mandamus to "facilitate" return of alien); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (affirming grant of injunctive relief that required the defendants to facilitate the return of the plaintiff-alien); *Hernandez Membreno v. Vergara*, No. 1:26-CV-496-RP, 2026 WL 1045952 (W.D. Tex. Apr. 14, 2026) (explaining that the removal of the petitioner defeated habeas jurisdiction, but permitting the alien to separately seek relief under the Federal Tort Claims Act); *Lopez-Flores v. Ibarra*, No. 1:17-CV-00105, 2018 WL 6579180 (S.D. Tex. Jan. 22, 2018) (denying motion to dismiss as to a *Bivens* claim and noting that the plaintiff alien also alleged a claim under the Federal Tort Claims Act).[3] Petitioner currently includes no such allegations in his Petition, but that fact stems from his mistaken belief that he did not face third-country removal when he initiated this lawsuit.

In addition, the record indicates that Respondents' removal of Petitioner may have violated his constitutional rights under the Due Process Clause of the Fifth Amendment. Respondents removed Petitioner to Sierra Leon with little to no notice, and with no apparent right to request a screening for any fears that he may have possessed of removal to that country. In other cases brought by aliens challenging third-country removal, this Court has concluded that the procedures that Respondents appear to have employed to remove Petitioner do not comply with the Fifth Amendment. *See Guerra Gutierrez De Guerra v. Warden, Port Isabel Serv. Processing Ctr.*, No. 1:26-CV-327, 2026 WL 1179777 (S.D. Tex. Apr. 30, 2026); *Aranda-Gomez v. Bondi*, No. 1:25-cv-258 (S.D. Tex., Feb. 20, 2026). Petitioner may be able to allege a claim based on the nature of his removal, although the relief that the Court could provide, if any, would most likely be limited to ordering Respondents to facilitate his return to the United States, at which time removal efforts would presumably resume. *See, e.g.*, *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).

[3] The Court notes that Petitioner's removal did not violate any court-issued Order. Had the removal done so, the Court would have inherent power "to enforce obedience to . . . lawful orders, judgments, and processes[,]" *Ex parte Robinson*, 86 U.S. 505, 510–11 (1873), which could include requiring Respondents to facilitate the return of Petitioner to the United States.

Under these circumstances, the Court finds it appropriate to grant leave to Petitioner to amend his pleading, should he wish to allege causes of action based on the factual developments since he filed his Petition. To some degree, Petitioner sought to do so through his Motion for a Temporary Restraining Order (Doc. 5) and accompanying Memorandum of Law (Doc. 5–1). In those documents, Petitioner references claims based on the *Accardi* doctrine, alleged violations of the Convention Against Torture, 8 U.S.C. § 1231(b)(3) and his due process rights, and on the allegedly-unlawful revocation of his Order of Supervision. But district courts in the Fifth Circuit "follow[ ] the sensible rule that a request for a preliminary injunction must also be based on allegations related to the claims in the complaint." *Computer & Communications Indus. Ass'n v. Paxton*, 184 F.4th 420, 436 n. 6 (5th Cir. July 24, 2026) (internal quotation marks omitted). As a result, such causes of action are not properly before this Court.

The Court takes no position on whether Petitioner possesses a viable claim based on his removal to Sierra Leon and any subsequent removal from that country. The Court finds, however, that good cause exists to grant leave to Petitioner to amend his pleading in light of factual developments.

**III.**

For these reasons, it is:

**ORDERED** that by no later than October 29, 2026, Petitioner Ndiaga Nguirane may file an amended pleading alleging claims based on his removal to Sierra Leone and any subsequent factual developments. Should Petitioner fail to file an amended pleading, the Court will deny all claims within the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief (Doc. 1).

Should Petitioner Ndiaga Nguirane file an amended pleading, it is also:

**ORDERED** that by no later than 21 days after the filing of the amended pleading, Respondents may file an answer, motion, or responsive pleading.

Signed on October 8, 2026.

Fernando Rodriguez, Jr.
United States District Judge